UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ABD AL-RAHIM HUSSEIN MUHAMMED AL-NASHIRI,<br><br>Plaintiff,<br><br>v.<br><br>BRUCE MACDONALD,<br><br>Defendant. | CASE NO. 11-5907 RJB<br><br>ORDER ON DEFENDANT'S MOTION TO DISMISS |

This matter comes before the Court on the Defendant Vice Admiral (Ret.) Bruce MacDonald's Motion to Dismiss. Dkt. 22. The Court has considered the pleadings filed in support of and in opposition to the motion, oral argument heard on 3 May 2012, and the remaining record.

Al-Nashiri is a Saudi national. Dkt. 1, at 2. According to the Complaint, he was arrested by "local authorities in the United Arab Emirates in October 2002" and was transferred to U.S. custody. Dkt. 1, at 2. He is currently detained at the United States Naval Station at Guantanamo Bay, Cuba. Dkt. 1, at 2. Al-Nashiri is facing trial before a military commission on numerous

charges, including murder in violation of the law of war and for his alleged role several al Qaeda terrorists attacks. Dkt. 1-1, at 15-24. He brings this case against MacDonald, the U.S. Defense Department official who convened the military commission in his case, seeking a declaration that the military commission does not have jurisdiction to hear the charges against him because the events giving rise to the charges "did not occur, as a matter of law, in the context of and [were] not associated with hostilities." Dkt. 1, at 11. MacDonald moves for dismissal of all claims for the failure of the Complaint to state a claim within the jurisdiction of the United States District Court. Dkt. 22. For the reasons set forth below, the motion should be granted.

## I. BACKGROUND FACTS AND PROCEDURAL POSTURE

### A. THE DEFENDANT VICE ADMIRAL MACDONALD

The Complaint alleges that the Defendant, MacDonald, serves as the Convening Authority for the U.S. Department of Defense, Office of Military Commissions. Dkt. 1. MacDonald lives in Silverdale, Washington. Dkt. 1, at 2. Al-Nashiri alleges that venue is proper pursuant to 28 U.S.C. § 1391(b). Dkt. 1, at 2.

### B. BACKGROUND AND THE MILITARY COMMISSIONS ACT OF 2009

Days after the terrorist attacks of September 11, 2001, Congress authorized the President to "use all necessary and appropriate force against those nations, organizations, or persons he determines planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001, or harbored such organizations or persons, in order to prevent any future acts of international terrorism against the United States by such nations, organizations or persons." Authorization for Use of Military Force, 115 Stat. 224, note following 50 U.S.C. § 1541 (2000 ed. Supp. III).

In interpreting the Authorization for Use of Military Force, the Department of Defense ordered the detention of certain foreign nationals, like Al-Nashiri, and they were transferred to

Guantanamo Bay, Cuba. *Boumediene v. Bush*, 553 U.S. 723 (2008). "Some of these individuals were apprehended on the battlefield in Afghanistan, others in places as far away from there as Bosnia and Gambia." *Id.*

> In *Hamdi v. Rumsfeld*, 542 U.S. 507, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004), five Members of the Court recognized that detention of individuals who fought against the United States in Afghanistan for the duration of the particular conflict in which they were captured, is so fundamental and accepted an incident to war as to be an exercise of the 'necessary and appropriate force' Congress has authorized the President to use.

*Boumediene v. Bush*, 553 U.S. 723, 736 (2008). In response to the Supreme Court's concerns regarding the detainees at Guantanamo in *Hamdi,* Congress enacted the Detainee Treatment Act of 2005. *Hamdan v. Rumsfeld,* 548 U.S. 557, (2006). After the Supreme Court raised more issues with the Detainee Treatment Act in *Hamdan* and in other court cases involving the detainees, Congress enacted the Military Commissions Act of 2006 ("MCA"), Pub. L. No. 109-366, 120 Stat. 2006, and amended it in 2009, Pub. L. No. 111-84, 123 Stat. 2574 (codified at 10 U.S.C. §948a *et. seq.*)("MCA"). *Boumediene,* at 736. The MCA is the statute that is now at issue.

Under the MCA, the President is authorized "to establish military commissions . . . for offenses triable by military commission." 10 U.S.C. § 948b(b). Such commissions now "have jurisdiction to try persons subject to this chapter for any offense made punishable by this chapter, sections 904 [aiding the enemy] and 906 [espionage] of this title . . ., or the law of war, whether such offense was committed before, on, or after September 11, 2001." 10 U.S.C. § 948d. Further, the MCA provides that "[a]n offense specified in the subchapter is triable by military commission under this chapter only if the offense is committed in the context of and associated with hostilities." 10 U.S.C. § 950p(c). Pursuant to the MCA, "[a] military commission is a competent tribunal to make a finding sufficient for jurisdiction." 10 U.S.C. § 948d.

When the United States decides to try a detained person under the MCA, "charges and specifications against an accused" are sworn to by a member of the armed forces who has "personal knowledge of, or reason to believe," the matters set forth are true. 10 U.S.C. § 948q. Military commissions are convened then by the Secretary of Defense, or his designee – known as the Convening Authority, after receipt and consideration of the charges and evidence. 10 U.S.C. § 948h. The military commission is composed of commissioned officers of the armed forces. 10 U.S.C. § 948i. A judge, prosecutor, and military defense counsel, all of whom are commissioned officers, are also detailed to the commission. 10 U.S.C. § 948j and 948k. The MCA now contains rules pertaining to the procedures used before and during trial, including discovery rules, evidentiary rules, and rules regarding appointment of legal counsel. 10 U.S.C. § 949a-n.

Individuals convicted in a military commission have the right to several layers of appellate review. First, the defendant can appeal to the Convening Authority, who can dismiss any charge, change a finding of guilt to that of a lesser included offense, and/or approve, suspend, or commute the sentence. 10 U.S.C. § 950b. Unless waived by the defendant, cases are automatically reviewed by the United States Court of Military Commission Review. 10 U.S.C. § 950c. Defendants then have an appeal of right to the United States Court of Appeals for the District of Columbia Circuit, which has "exclusive jurisdiction to determine the validity of a final judgment rendered by a military commission." 10 U.S.C. § 950g(a)-(d). Further, the Supreme Court may review a judgment from the military commission by writ of certiorari. 10 U.S.C. § 950g(e).

### C. CHARGES SWORN AND REFERRED AGAINST AL-NASHIRI

The Complaint alleges that Al-Nashiri was arrested in October of 2002 by local authorities in the United Arab Emirates and turned over to the United States. Dkt. 1, at 5. He alleges that in May of 2003, he was named as an unindicted co-conspirator in a plot that resulted in the bombing of the USS COLE and attempted bombing of the USS THE SULLIVANS. Dkt. 1, at 5 (*citing United States v. al-Badawi, et. al.,* No. 98-CR-1023 (S.D.N.Y. unsealed May 15, 2003).

According to the Complaint, on April 20, 2011, Col. Edward Regan forwarded sworn charging documents to the Convening Authority, MacDonald (the Secretary of Defense's designee), relating to Al-Nashiri's alleged conduct from 1996-2002. Dkt. 1, at 5. A second sworn charging document was sent on September 15, 2011, but is asserted to differ from the first only in the identification of alleged victims and the verbiage of certain charges. Dkt. 1, at 5. Al-Nashiri alleges that the charges stem from three events that occurred in Yemen in 2000 and 2002, and he faces a maximum penalty of death. Dkt. 1, at 5. According to Al-Nashiri, "two of these incidents are identical to the allegations contained in the indictment currently pending in the Southern District of New York." Dkt. 1, at 5.

The first incident concerns the attempted bombing of the USS THE SULLIVANS around January 3, 2000, in Aden, Yemen. Dkt. 1, at 5. The second incident was the bombing of the USS COLE on October 12, 2000, which resulted in the death of seventeen U.S. personnel, also in Aden, Yemen. Dkt. 1, at 6. Al-Nashiri alleges in his Complaint that President Clinton "declined to recognize" that the attempted bombing of the USS THE SULLIVANS and the bombing of the USS COLE "as being in the context of and associated with hostilities." Dkt. 1, at 6. The Complaint asserts that "Congress likewise declined to take any action that would have

ORDER ON DEFENDANT'S MOTION TO
DISMISS- 5

triggered the application of the laws of war" in response to the attempted bombing or bombing. Dkt. 1, at 6-7.

Al-Nashiri alleges that the third incident on which charges are based is the October 6, 2002, bombing of a French tanker, the *M/V Limburg*, in Yemen. Dkt. 1, at 7. The Complaint asserts that:

> President Bush deployed no U.S. military personnel, made no report to Congress pursuant to the War Powers Resolution and issued no executive order otherwise indicating that either the United States or France was engaged in hostilities in Yemen. Likewise, Congress did not declare war, pass an authorization for the use of military force or otherwise take any legislative action affirmatively recognizing the applicability of the laws of war in Yemen. The only U.S. involvement in the incident was law enforcement assistance given to France's criminal investigation.

Dkt. 1, at 7.

According to the Complaint, no hostilities of any kind were certified to exist in Yemen until President Bush submitted a War Powers Resolution report to Congress in September 2003, "stating for the first time that the United States had undertaken 'military operations against al-Quaida and other international terrorists in the Horn of Africa region, including Yemen." Dkt. 1, at 7 (*quoting Letter to congressional leaders reporting on efforts in the global war on terrorism,* 39 WEEKLY COMP. PRES. DOC. 1247 (September 19, 2003). Further, the Complaint alleges that the first "Congressional recognition of an armed conflict in Yemen of any kind was a 2009 Senate resolution that concerned a rebel insurgency that began in 2004." Dkt. 1, at 8 (*citing* Supporting peace, security, and innocent civilians affected by conflict in Yemen, S. Res. 341, 111th Cong. (2009)(*enacted*)).

The Complaint asserts that on July 15, 2011, Al-Nashiri's counsel submitted a "formal request" to MacDonald, "asking that he not convene a commission for these charges because, *inter alia,* the underlying allegations did not occur in the context of and were not associated with hostilities." Dkt. 1, at 8. The Complaint alleges that "[o]n September 28, 2011, MacDonald

nevertheless issued orders creating a commission" for the trial of Al-Nashiri (Dkt. 1, at 8) and referred the sworn charges, as amended, to the commission. *Id*.

### D. GROUNDS FOR RELIEF IN THE COMPLAINT

In his first ground for relief, Al-Nashiri alleges that MacDonald's orders convening the military commission in his case impose upon him "the burden of defending himself against capital charges whose factual allegations occurred neither "in the context of nor were associated with hostilities," and so contravene 10 U.S.C. § 950p (c)(providing "[a]n offense specified in the subchapter is triable by military commission under this chapter only if the offense is committed in the context of and associated with hostilities"), making the orders "*ultra vires*." Dkt. 1, at 9.

In his second ground for relief, Al-Nashiri further asserts that MacDonald's orders violate Article III § 2 of the United States Constitution, which vests exclusive jurisdiction over "'the trial of all crimes'" in the federal courts. Dkt. 1, at 9 (*quoting* U.S. Const., art. III § 2, cl. 3). The Complaint alleges that the only exceptions to Article III courts' jurisdiction, including "military trials for offenses that occurred in the context of and were associated with an armed conflict subject to the laws of war," do not apply and so MacDonald's orders are unconstitutional. Dkt. 1, at 10.

In his third ground for relief, Al-Nashiri alleges that the "Fifth, Sixth and Eighth Amendments collectively require that the government only impose death following a regular trial affording all the necessary safeguards of due process and procedural fairness." Dkt. 1, at 10. Al-Nashiri asserts that the narrow and partial exception to the trial guarantees of the Bill of Rights for a "military trial of offenses that occurred in the context of and were associated with an armed conflict subject to the laws of war" does not apply here. Dkt. 1, at 10. He alleges that MacDonald's orders "disregard the fair trial guarantees of the Bill of Rights," and so are unconstitutional and "actions taken under them unlawful." Dkt. 1, at 10.

Al-Nashiri seeks a judgment declaring that "neither the President nor the Congress certified the existence of an armed conflict subject to the laws of war in Yemen prior to September 2003." Dkt. 1, at 11. Al-Nashiri also seeks a judgment declaring that MacDonald "acted beyond his authority and in violation of the constitution by issuing orders to convene a military commission with the power to recommend the sentence of death" for allegations relating to the attempted bombing of the USS THE SULLIVANS, the bombing of the USS COLE, and the bombing of the *M/V Limburg* because these events "did not occur, as a matter of law, in the context of and [were] not associated with hostilities." Dkt. 1, at 10.

### E.  PENDING MOTION TO DISMISS

MacDonald now files a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and in the alternative, pursuant to Fed. R. Civ. P. 12(b)(6). Dkts. 22 and 27. He argues that this Court lacks subject matter jurisdiction because Al-Nashiri's claims are expressly barred by 28 U.S.C. § 2241(e)(2), and even if that were not the case, the government has not waived sovereign immunity. *Id*. MacDonald further moves for dismissal of this case asserting that the Court should abstain from exercising equitable jurisdiction in accord with *Schlesinger v. Councilman*, 420 U.S. 738 (1975). *Id.*

Al-Nashiri opposes the motion, arguing that MacDonald's reliance on 28 U.S.C. § 2241(e)(2) is misplaced because the Supreme Court struck down the statute in *Boumediene v. Bush*, 553 U.S. 723 (2008). Dkt. 23. Al-Nashiri argues that even if the Supreme Court did not hold that 28 U.S.C. § 2241(e)(2) was unconstitutional, MacDonald has "not shown how the claims against him fall within its coverage." *Id.* Al-Nashiri asserts that MacDonald is not protected by sovereign immunity because he is being sued in his individual capacity for acts that are *ultra vires* and/or unconstitutional. *Id.* (*citing Larson v. Domestic & Foreign Commerce Corporation*, 337 U.S. 682, 690 (1949)). Al-Nashiri lastly argues that the Court should not decline to exercise

jurisdiction pursuant to *Councilman* because the Supreme Court has never applied it to military commissions, it is rooted in prudential considerations not present here, and it does not apply to his challenges to the commission's authority to try him. *Id.*

## II.  DISCUSSION

This opinion will first address MacDonald's Motion to Dismiss for lack of subject matter jurisdiction because "Article III jurisdiction is always an antecedent question." *Steel Co. v. Citizens for a Better Env't.,* 523 U.S. 83, 101 (1998). This opinion will then address the Motion to Dismiss for failure to state a claim.

### A. STANDARD FOR MOTION TO DISMISS

*Fed. R. Civ. P. 12(b)(1).* The district courts of the United States are "courts of limited jurisdiction." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). They possess only that power authorized by Article III of the U.S. Constitution and statutes enacted by Congress. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). A cause of action is presumed to lie "'outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.'" *K2 America Corp. v. Roland Oil & Gas, LLC*, 653 F.3d 1024, 1027 (9th Cir. 2011)(*quoting Kokkonen v. Guardian Life Ins. Co. of America.*, 511 U.S. 375, 377 (1994)).

Pursuant to Fed. R. Civ. P. 12(b)(1), a case may be dismissed for lack of subject matter jurisdiction. In reviewing a motion to dismiss under Rule 12(b)(1), all factual allegations in the complaint are accepted as true. *Carson Harbor Village, Ltd. v. City of Carson*, 353 F.3d 824, 826 (9th Cir. 2004).

*Fed. R. Civ. P. 12(b)(6).* Fed. R. Civ. P. 12(b)(6) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir.

1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)(*internal citations omitted*). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 1965. Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974.

B. **MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION – SECTION 7 OF THE MCA AND SOVEREIGN IMMUNITY**

  1. <u>Section 7 of the MCA</u>

As is relevant here, Section 7 of the MCA, codified at 28 U.S.C. § 2241(e), provides:

> (1) No court, justice, or judge shall have jurisdiction to hear or consider an application for a writ of habeas corpus filed by or on behalf of an alien detained by the United States who has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination.
> (2) Except as provided in [§§ 1005(e)(2) and (e)(3) of the DTA] no court, justice, or judge shall have jurisdiction to hear or consider any other action against the United States or its agents relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement of an alien who is or was detained by the United States and has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination.

Pursuant to § 2241(e)(2), this Court does not have subject matter jurisdiction to consider Al-Nashiri's claims for relief. His requested relief, that the Court declare that the military commission does not have jurisdiction to hear the charges against him because the events giving rise to the charges did not occur, as a matter of law, in the context of and were not associated with hostilities, "relate" to a core aspect of the trial, that is, – whether the trial should occur in the military commission. Making decisions regarding jurisdiction is a key aspect of any trial.

Further, this reading is consistent with other provisions in the MCA. Congress specifically provided that "[a] military commission is a competent tribunal to make a finding sufficient for jurisdiction." 10 U.S.C. § 948d. In § 948d, Congress directed the military commission, not a district court, to determine whether the military commission has jurisdiction in a particular case. This Court is without subject matter jurisdiction to consider Al-Nashiri's claims under of § 2241(e)(2).

Al-Nashiri argues that § 2241(e)(2) was declared unconstitutional by the United States Supreme Court in *Boumediene v. Bush*, 553 U.S. 723 (2008). Al-Nashiri's reading of *Boumediene* is too sweeping. The *Boumediene* Court held that the MCA's Section 7, which stripped the federal courts of jurisdiction to hear habeas corpus petitions filed by enemy combatants, was an unconstitutional suspension of the writ of habeas corpus. *Boumediene v. Bush*, 553 U.S. 723 (2008). The Supreme Court was first asked to determine whether "MCA § 7 denies the federal courts jurisdiction to hear habeas corpus actions pending at the time of its enactment." *Id.*, at 736. Concluding that the effective date provision of the Act applied to the then pending habeas actions, the Supreme Court then turned to the question of whether the petitioners were barred from seeking the writ of habeas corpus or invoking the protections of the Suspension Clause of the U.S. Constitution because of their status as enemy combatants or their physical location at Guantanamo Bay. *Id.*, at 739. The Supreme Court reviewed the historical importance of the writ of habeas corpus, one so important to the framers that it is included in the suspension clause, which provides "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." *Id*. (*quoting* Art. I. § 9, cl. 2). The *Boumediene* Court held that the Suspension Clause has "full effect at Guantanamo Bay," and that "[t]he MCA does not purport to be a formal suspension of the writ; and the Government, in its submissions to us, has not argued that it is. Petitioners,

ORDER ON DEFENDANT'S MOTION TO
DISMISS- 11

therefore, are entitled to the privilege of habeas corpus to challenge the legality of their detention." *Id.,* at 771.

Al-Nashiri's urges the Court to expand the Supreme Court's *Boumediene* holding as invalidating the entirety of Section 7, including those portions unrelated to the writ of habeas corpus - an invitation that will be declined. A court should "refrain from invalidating more of the statute than is necessary whenever an act of congress contains unobjectionable provisions separable from those found to be unconstitutional . . . and to maintain the act in so far as it is valid." *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987) (*internal quotations omitted*). "The Supreme Court's reference to § 7 in *Boumediene* did not specify a particular subsection of 28 U.S.C. § 2241(e), but its discussion of the Suspension Clause clearly indicates it was referring only to that part of § 7 codified at § 2241(e)(1)." *Al-Zahrani v. Rodriguez*, 669 F.3d 315 (D.C. Cir. 2012)(*quoting Kiyemba v. Obama*, 561 F.3d 509, 512 n. 1 (D.C. Cir. 2009)(*cert. denied*)). Section 2241(e)(2) remains valid and bars federal district court review of this action. Other courts, but one, are in accord. *See, Al-Zahrani v. Rodriguez*, 669 F.3d 315 (D.C. Cir. 2012)(holding § 2241(e)(2) barred claims for damages against governmental officials for alleged mistreatment of Guantanamo detainees); *Al Janko v. Gates,* – F. Supp. 2.d --, 2011 WL 6440906, at *4 (holding § 2241(e)(2) barred claims for damages against governmental officials for constitutional violations); and *In re Guantanamo Bay Detainee Litigation*, 570 F. Supp. 2d 13 (D.D.C. 2008); *But see*, *Hamad v. Gates,* 2011 WL 6130413 (W.D. Wash. Dec. 8, 2011)(concluding *Boumediene* Court invalidated all of § 2241(e) – provisions covering habeas and all other actions).

The motion to dismiss should be granted because this Court does not have subject matter jurisdiction, pursuant to 28 U.S.C. § 2241(e)(2), to consider Al-Nashiri's claims for relief.

ORDER ON DEFENDANT'S MOTION TO
DISMISS- 12

2. <u>Sovereign Immunity</u>

"The United States may not be sued without its consent and the existence of such consent is a prerequisite for jurisdiction." *U.S. v. Mitchell*, 463 U.S. 206, 212 (1983). A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied. *Lane v. Pena,* 518 U.S. 187, 192 (1996)(*internal citations omitted*). As the party asserting a claim against the United States, Al-Nashiri "has the burden of demonstrating an unequivocal waiver of immunity." *U.S. v. Park Place Assoc., Ltd.*, 563 F.3d 907, 924 (9th Cir. 2009).

MacDonald's position that Al-Nashiri's claims are barred by sovereign immunity is correct. Al-Nashiri fails to point to an unequivocal statutory waiver of sovereign immunity. Al-Nashiri references the Administrative Procedures Act ("APA") 5 U.S.C. § 702. Dkt. 23. The APA's waiver of sovereign immunity provides, in relevant part,

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted . . . in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States.

5 U.S.C. § 702. The APA's waiver of immunity is limited, however. It explicitly excludes military commissions from its definition of "agency." 5 U.S.C. § 701(b)(1). It provides, "[f]or the purposes of this chapter - "agency" means each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include: . . . courts martial and military commissions." *Id.* Further, where another "statute[] preclude[s] judicial review," here in 28 U.S.C. § 2241(e)(2)'s explicit provisions, the APA's waiver of immunity does not apply. 5 U.S.C. § 701(a)(1). Judicial review may also be impliedly precluded from review under the APA. *See Block v. Community Nutrition Institute,* 467 U.S. 340, 345 (1984). Preclusion of judicial review under the APA can be determined "not only from

its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Id.* The MCA's statutory scheme demonstrates Congressional intent to preclude this Court's review of MacDonald's actions. Congress has vested exclusive jurisdiction to review actions of the Convening Authority and review of the commission's judgments, first with the U.S. Court of Military Commission Review, then with the D.C. Circuit Court of Appeals, and, finally, with the U.S. Supreme Court. 10 U.S.C. § 950c and 950g. Further, the objectives of the MCA and the legislative history demonstrate judicial review under the APA is impliedly precluded. The nature of the administrative action – the decision to convene a military tribunal - is such that Congress impliedly stripped this court of jurisdiction to review MacDonald's decision under the APA. Al-Nashiri has failed to show an "unequivocal waiver of immunity." *Park Place Assoc.*, at 924.

Al-Nashiri argues that he is not suing MacDonald in his official capacity, and therefore the United States, but is suing him in his individual capacity. Dkt. 23. Al-Nashiri asserts that MacDonald's actions (in convening the military commission to try Al-Nashiri for events which did not occur in the context of and were not associated with hostilities) are *ultra vires,* that is outside of his statutory authority and unconstitutional. Dkt. 23. He argues that an exception to the sovereign immunity applies – where prospective relief is sought against an official acting *ultra vires* and/or in an unconstitutional manner. Dkt. 23 (*citing Larson v. Domestic and Foreign Commerce Co.,* 337 U.S. 682 (1949)).

As MacDonald properly points out, *Larson*'s exceptions to sovereign immunity do not apply because this case is really against the United States, not against MacDonald personally, and, in any event, the MCA preempts judicial review. Dkts. 23 and 27.

First, the determination of whether this case is really a case against MacDonald in his individual or official capacity is driven by the relief sought. *Larson,* at 687 (holding "the crucial

ORDER ON DEFENDANT'S MOTION TO
DISMISS- 14

question is whether the relief sought in a suit nominally addressed to the officer is relief against the sovereign"). The issue, then, is whether Al-Nashiri seeks relief against MacDonald or against the United States government.

"Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of . . . law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "Should the official die pending final resolution of a personal-capacity action, the plaintiff would have to pursue his action against the decedent's estate. In an official-capacity action in federal court, death or replacement of the named official will result in automatic substitution of the official's successor in office." *Id.*, at 166 n. 11. "[A] suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 102 n. 11 (1984).

The real party in interest in this case is the United States. Al-Nashiri has not pled any relief that he would or could purse against MacDonald (or his estate) if he died or was replaced as the Convening Authority. The United States government is the entity that seeks to try Al-Nashiri for capital offenses in a military tribunal. The declaratory judgments Al-Nashiri seeks would operate against the United States, not against MacDonald. The "effect of the judgment would be to restrain the Government from acting" – prevent it from trying Al-Nashiri in the military commission. "A victory in an official capacity suit imposes liability on the entity that the officer represents." *MacMillian v. Monroe County, Al.*, 520 U.S. 781, 785 n. 2 (1997).

In addition to being an action against MacDonald in his official capacity and, so, the United States, *Larson's* exceptions do not apply here for a second reason. Congress has

ORDER ON DEFENDANT'S MOTION TO
DISMISS- 15

provided specific remedies for Al-Nashiri in the MCA, and so the more general remedy under *Larson* is preempted.  In *E.E.O.C. v. Peabody Western Coal Co.*, 610 F.3d 1070 (9th Cir. 2010), the Ninth Circuit explained that for a number of years, "prospective relief against federal officials was available under the fiction" of *Ex parte Young,* 209 U.S. 23 (1908).  "For example, in *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949), the Supreme Court allowed prospective relief against a federal official despite an asserted defense of sovereign immunity."  *Peabody,* at 1085.

> The [*Larson*] Court wrote that there may be, of course, suits for specific relief against officers of the sovereign which are not suits against the sovereign. If the officer purports to act as an individual and not as an official, a suit directed against that action is not a suit against the sovereign. ... [W]here the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions. The officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden. His actions are ultra vires his authority and therefore may be made the object of specific relief.

*Id*. (*quoting Larson*, at 689). The Ninth Circuit followed the "'legal fiction' described in *Larson*" in later cases.  *Id.*  The *Peabody* Court explained that since 1976, however, federal courts have looked to § 702 of the APA "to serve the purposes of the *Ex parte Young* fiction in suits against federal officers."  *Id.*  Section 702 of the APA has generally replaced the *Ex Parte Young* fiction since 1976.  *Id.*  As discussed above, review under the APA is precluded in this case, in part, because a more specific statute – the MCA applies.  The U.S. Supreme Court has held that where Congress has created a "precisely drawn, detailed statute," like the MCA, more "general remedies" such as those fashioned under *Larson* are preempted.  *See Block v. North Dakota*, 461 U.S. 273, 280-86 (1983).  The MCA provides for review of the decisions made by the Convening Authority and the Commission by a military court of appeals and by specific Article III courts.  Congress has created a specific forum for Al-Nashiri to obtain relief, if he is so entitled, and accordingly, this Court's review of MacDonald's decisions pursuant to *Larson* is preempted.

Al-Nashiri's claims are barred by sovereign immunity. He has failed to show that the United States has waived its immunity, or that an exception to sovereign immunity applies to his case. MacDonald's Motion to Dismiss for lack of subject matter jurisdiction should be granted.

### C. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM – *COUNCILMAN* ABSTENTION

In addition to this Court's lack of subject matter jurisdiction to review this case, the principles of comity articulated in *Schlesinger v. Councilman*, 420 U.S. 738 (1975), counsel in favor of abstention. Under *Councilman*, the Supreme Court held that federal courts should generally avoid reviewing "acts of a court martial, within the scope of its jurisdiction and duty." *Id. Councilman* was a case brought by an active duty service member seeking to enjoin a court-martial. *Id.* Councilman urged the Supreme Court to exercise equitable jurisdiction and stop his court-martial, arguing that the charges against him (sale and possession of marijuana) were not "service related," and so not within the jurisdiction of the court-martial. *Id.* In declining to intervene, the Supreme Court reviewed other occasions when abstention from equitable jurisdiction was generally warranted: in state criminal prosecutions except in extraordinary circumstances, and in habeas or administrative proceedings that are unexhausted. *Id.* The *Councilman* Court relied on "the necessity of respect for coordinate judicial systems," and the value of "looking to the special competence of agencies in which Congress has reposed the duty to perform particular tasks." *Id.* The Supreme Court noted that declining jurisdiction there would also avoid "duplicative proceedings," and the possibility that the "agency's ultimate decision will obviate the need for judicial intervention." *Id.* Further, specific to Councilman's situation, the Supreme Court found particularly compelling the notion that courts should not interfere with the military's regulation of the order and discipline of its members. *Id.*, at 752. The Supreme Court also found relevant to Councilman's case the idea that the courts should

1 show deference to Congress's balancing of the service members' rights and the needs of the
2 military by way of the Uniform Code of Military Justice. *Id.*, at 757-758.
3      Many of the same principles apply here. This Court should abstain from exercising
4 equitable jurisdiction consistent with *Councilman.* Although this is not a case involving a
5 service member, Congress was attempting to balance many considerations in an unprecedented
6 situation. While the use of military commissions in these circumstances is subject to debate and
7 criticism, their existence is for the people to decide through Congress consistent with the
8 Constitution. MacDonald's Motion to Dismiss for failure to state a claim should be granted.

9      **D. CONCLUSION**
10      This Court does not have subject matter jurisdiction to decide Al-Nashiri's claims
11 because of the operation of 28 U.S.C. § 2241(e)(2) and because MacDonald has sovereign
12 immunity. Further, even if this Court had subject matter jurisdiction, under the principles of
13 abstention announced in *Councilman,* the Court should not exercise equitable jurisdiction. In so
14 doing, this Court is recognizing the role of each of the branches of government in these cases:
15 Congress in creating the commissions, the executive in conducting them, and the judiciary in
16 reviewing their judgments. Al-Nashiri fails to show that he cannot or will not raise the issue of
17 the military commission's jurisdiction within that tribunal, or that he is in some manner barred
18 from appealing a decision on that issue to the Article III courts consistent with the MCA. Al-
19 Nashiri's case should be dismissed.

20      **III.    ORDER**
21      Therefore, it is hereby **ORDERED** that:
22      • Defendant Vice Admiral (Ret.) Bruce MacDonald's Motion to Dismiss (Dkt. 22)
23      **IS GRANTED**; and
24      • This case **IS DISMISSED**.

1  The Clerk is directed to send uncertified copies of this Order to all counsel of record and
2  to any party appearing *pro se* at said party's last known address.
3  Dated this 10th day of May, 2012.

*[signature]*

ROBERT J. BRYAN
United States District Judge